UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| PHILIP MORRIS USA INC., <br><br> Plaintiff, <br><br> v. <br><br> KING MOUNTAIN TOBACCO COMPANY, INC.; MOUNTAIN TOBACCO; DELBERT L. WHEELER, SR., AND RICHARD "KIP" RAMSEY, <br><br> Defendants. | NO. CV-06-3073-RHW <br><br> **ORDER GRANTING MOTION TO STAY** |

Before the Court are Plaintiff's Motion for Preliminary Injunction (Ct. Rec. 15) and Motion for Permanent Injunction to Secure Its Rights Under the Federal Trademark and Trade Dress Law (Ct. Rec. 31). Also before the Court are Defendants' Motion to Dismiss or Stay (Ct. Rec. 41); Motion to Dismiss for Improper Service (Ct. Rec. 44); Motion for Leave to File Supplemental Brief and Supplemental Authority (Ct. Rec. 84); Motion to Expedite Hearing on Motion for Leave to File Document (Ct. Rec. 86); and Motion to Withdraw Motion to Dismiss for Improper Service (Ct. Rec. 93). A hearing was held on November 14, 2006. Leslie Weatherhead, William Symmes, and Roberta Horton appeared on behalf of Plaintiff Philip Morris USA; Bart Freedman, Michael Keyes, and Theresa Keyes appeared on behalf of Defendants. Although there are quite a few motions pending, the Court focused oral argument at the hearing and now focuses the discussion in this Order on the threshold issue presented in both Defendants' Motion to Dismiss or Stay (Ct. Rec. 44) and Plaintiff's Motion for Permanent Injunction to Secure Its Rights Under the Federal Trademark and Trade Dress Law

**ORDER GRANTING MOTION TO STAY** * 1

(Ct. Rec. 41).

## BACKGROUND FACTS

Defendants Delbert Wheeler and Richard "Kip" Ramsey are both enrolled members of the Yakama Indian Nation. Together they own Defendant Mountain Tobacco Company, d/b/a King Mountain Tobacco Company, Inc., which is a corporation formed and licensed under the laws of the Yakama Indian Nation. Defendants began selling King Mountain cigarettes to smoke shops on the Yakama Reservation in January 2006. Soon thereafter, they expanded the sales to other Indian tribes and smokeshops on other Indian reservations. Defendants' warehouse and distribution facilities are located on the Yakama Reservation.

Plaintiff Philip Morris alleges Defendants deliberately modeled their packaging such that it looks similar to Plaintiff's packaging for its Marlboro brand cigarettes in an attempt to take advantage of the goodwill that is associated with the Marlboro brand. As a result, consumers are mislead into thinking that Philip Morris is affiliated or associated with King Mountain cigarettes. Philip Morris filed its Complaint on August 7, 2006, and filed an Amended Complaint on September 15, 2006, alleging trademark infringement, in violation of the Lanham Act, 15 U.S.C. § 1114; false designation of origin and trade dress infringement, in violation of 15 U.S.C. § 1125(a); trademark dilution, in violation of 15 U.S.C. § 1125(c); unfair competition and unfair and deceptive acts, under Wash. Rev. Code § 19.86.010, *et seq*.; trademark dilution in violation of Wash. Rev. Code § 19.77.160; and common law unfair competition.

On September 29, 2006, Defendants filed a Complaint for declaratory relief in the Yakama Tribal Court. In that Complaint, Defendants allege that during the months of August and September 2006, agents from Philip Morris have notified various retailers selling King Mountain cigarettes that if they did not cease to sell the cigarettes they would no longer be permitted to sell Philip Morris products and would be sued for damages. Defendants state that Philip Morris "has come upon

**ORDER GRANTING MOTION TO STAY** \* 2

the reservation to do business without permission of the Yakama Indian Nation, is not licensed thereby, and in so doing has submitted itself to the jurisdiction of the Yakama Tribal Court." In the Complaint, Defendants deny trademark and trade dress infringement and allege that Philip Morris' actions have violated the Yakama Treaty of 1855.

## DISCUSSION

In their Motion to Dismiss or Stay, Defendants request the Court either dismiss or stay this litigation pursuant to the tribal court exhaustion doctrine.

**A.     Tribal Court Exhaustion**

The tribal court exhaustion doctrine arose through a series of Supreme Court decisions applying the principles of comity and tribal self-governance. *See Iowa Mut. Ins. Co. v. LaPlante*, 480 U.S. 971, 975-77 (1987) (extending the tribal court exhaustion doctrine to cases based on diversity jurisdiction); *Nat'l Farmers Union Ins. Cos. v. Crow Tribe*, 471 U.S. 845, 855-57 (1985) (establishing the tribal court exhaustion doctrine in cases with federal question jurisdiction). The doctrine requires a federal court "to stay its hand in order to give the tribal court a 'full opportunity to determine its own jurisdiction[ ]' . . . [because] unconditional access to the federal forum would place it in direct competition with the tribal courts, thereby impairing the latter's authority over reservation affairs." *Iowa Mut.*, 480 U.S. at 976 (quoting *Nat'l Farmers Union*, 471 U.S. at 857).

The exhaustion doctrine is prudential and a matter of comity, not a jurisdictional prerequisite. *Strate v. A-1 Contractors*, 520 U.S. 438, 451 (1997). Accordingly, it is subject to several exceptions: It is not required where "an assertion of tribal jurisdiction 'is motivated by a desire to harass or is conducted in bad faith,' or where the action is patently violative of express jurisdictional prohibitions, or where exhaustion would be futile because of the lack of adequate opportunity to challenge the court's jurisdiction." *Nat'l Farmers Union*, 471 U.S. at 856 n.21 (citation omitted). Exhaustion is also not required if federal law

**ORDER GRANTING MOTION TO STAY** * 3

expressly provides that a claim can only be heard in federal court. *See El Paso Natural Gas Co. v. Neztsosie*, 526 U.S. 473, 484-87 (1999) (holding that tribal court jurisdiction is foreclosed in cases under the Price-Anderson Act, 42 U.S.C. § 2210, because the statute expresses an "unmistakable preference for a federal forum" by allowing claims filed in state court to be removed to federal court, and finding the failure to mention removal from tribal courts to be based on "inadvertence"). Lastly, a district court should not abstain from considering the jurisdictional question if "it is otherwise plain that the tribal court lacks jurisdiction over the dispute, such that adherence to the exhaustion requirement would serve no purpose other than delay." *Boozer v. Wilder*, 381 F.3d 931, 935 (9th Cir. 2004) (citing *Nevada v. Hicks*, 533 U.S. 353, 369 (2001); *Strate*, 520 U.S. at 459-60).

The Ninth Circuit has elaborated upon and applied the tribal court exhaustion doctrine in several cases since it was established. Most notably, in *Stock West Corp. v. Taylor*, 964 F.2d 912, 919 (9th Cir. 1992) (*en banc*), the Ninth Circuit discussed the principles of comity behind the tribal court exhaustion doctrine and held that abstention is appropriate where there exists a "colorable question" whether the tribal court has jurisdiction over the asserted claims. The court explained that by "colorable" it meant that on the record "the assertion of tribal court jurisdiction is plausible and appears to have a valid or genuine basis." *Id.*

**B.     Tribal Court Jurisdiction Over Philip Morris**

Plaintiff focuses its argument on the existence, or lack thereof, of tribal court jurisdiction over it. It cites to the line of cases originating with *Montana v. United States*, 450 U.S. 544 (1981), discussing tribal court jurisdiction over non-Indians in civil cases. *Montana* established the principle that in general, "the inherent sovereign powers of an Indian tribe do not extend to the activities of nonmembers of the tribe." *Id.* at 565. This principle is subject to two exceptions where a tribe may exercise its sovereign authority over nonmembers: "The first exception relates

**ORDER GRANTING MOTION TO STAY** * 4

to nonmembers who enter consensual relationships with the tribe or its members; the second concerns activity that directly affects the tribe's political integrity, economic security, health, or welfare." *Strate*, 520 U.S. at 446 (discussing the rule as described in *Montana*).

The Supreme Court more recently delineated the boundaries of tribal court jurisdiction in *Nevada v. Hicks*. In that case, Nevada game wardens and tribal police officers executed a search warrant issued by a state court upon the reservation residence of a tribal member. 533 U.S. at 356-57. The tribal member sued various state and tribal officials under both tribal and federal law, contending the search exceeded the bounds of the warrant. *Id*. Some parties were dismissed, and the defendants were eventually limited to the state officials in their individual capacities. *Id*. at 356. The State of Nevada and the officials then filed a federal suit seeking a declaratory judgment that the tribal court lacked jurisdiction over the case. *Id*. at 357. The Supreme Court found the tribal court lacked jurisdiction to hear the claims against the state officials, even though the search occurred on tribal lands. *Id*. at 374. However, the Court expressly limited its holding "to the question of tribal-court jurisdiction over state officers enforcing state law[,]" leaving open the question of tribal court jurisdiction over nonmember defendants in general. *Id*. at 358 n.2; *see also Ford Motor Co. v. Todecheene*, 394 F.3d 1170, 1175 (9th Cir. 2005).

This case does not involve state officials enforcing state law, and therefore it is distinguishable from *Nevada v. Hicks*. However, the Court certainly has considered the reasoning in *Hicks* in its determination of whether there exists a colorable question of tribal court jurisdiction over Philip Morris, rendering a stay or dismissal appropriate. The Supreme Court in *Hicks* clarified that "a tribe's inherent adjudicative jurisdiction over nonmembers is at most only as broad as its legislative jurisdiction." 533 U.S. at 367 (finding "no provision in federal law provides for tribal-court jurisdiction over § 1983 claims."). Therefore, the Court

**ORDER GRANTING MOTION TO STAY** \* 5

must determine whether there is a colorable question as to whether the Yakama Indian Nation could regulate the activities at issue in this case.

At the outset, the Court notes that Lanham Act claims, such as the one in this case, may be brought in state court. *See Entex Indus., Inc. v. Warner Communications*, 487 F. Supp. 46, 48 (C.D. Cal. 1980). The Court also points out that, as is obvious from Plaintiff's Complaint in this case, trademarks, infringement, and unfair competition are currently regulated under both federal and state law. *See* 6 McCarthy on Trademarks & Unfair Competition § 32:1 (4th ed.). In fact, the Act refers to assertion of remedies in a "civil action," 15 U.S.C. § 1114(1); and it discusses remedies asserted in "the several courts vested with jurisdiction of civil actions arising under this Act." 15 U.S.C. § 1116 (describing jurisdiction and power to grant injunctions under the Lanham Act). The Court concludes that these areas of the law may very well also be regulated by the Yakama Indian Nation, particularly considering Defendant King Mountain Tobacco Company was formed and licensed under its laws.

It is not clear that the tribe would not have regulatory authority over trademarks, infringement, and unfair competition; therefore, it is not clear whether tribal courts have adjudicative authority to address trademark claims against tribal members whose conduct occurred on reservation lands. Therefore, there exists a colorable question of the existence of tribal court jurisdiction in this case over Philip Morris. In the interest of comity and the promotion of tribal sovereignty, the Court shall abstain from further action in this matter to give the tribal court the opportunity to address the jurisdictional question by applying the tests found in *Montana*, *Strate*, and *Hicks*, among others to the facts presented here, in the first instance.

Accordingly, **IT IS HEREBY ORDERED**:

1. Defendants' Motion to Dismiss or Stay (Ct. Rec. 41) is **GRANTED**.
2. Plaintiff's Motion for Permanent Injunction to Secure Its Rights Under

**ORDER GRANTING MOTION TO STAY** * 6

1  the Federal Trademark and Trade Dress Law (Ct. Rec. 31) is **DENIED**.

    3.  The above-captioned matter is **STAYED** until tribal court remedies have been exhausted.  At such time, the parties shall file a status certificate notifying the Court of their progress.

    4.  Defendants' Motion for Leave to File Supplemental Brief and Supplemental Authority (Ct. Rec. 84) and Motion to Expedite Hearing on Motion for Leave to File Document (Ct. Rec. 86) are **GRANTED**.

    5.  Defendants' Motion to Withdraw Motion to Dismiss for Improper Service (Ct. Rec. 93) is **GRANTED**.  Defendants' Motion to Dismiss for Improper Service is **WITHDRAWN** and **DENIED as moot**.

    6.  Plaintiff's Motion for Preliminary Injunction (Ct. Rec. 15) is **DENIED** with leave to renew pending tribal court exhaustion.

**IT IS SO ORDERED.**  The District Court Executive is directed to enter this Order and forward copies to counsel.

**DATED** this 1st day of December, 2006.

*s/ Robert H. Whaley*

ROBERT H. WHALEY  
Chief United States District Judge

Q:\CIVIL\2006\Philip Morris USA\stay.ord.wpd

**ORDER GRANTING MOTION TO STAY** * 7